# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF CONNECTICUT

**CHRISTOPHER B. REILLY,**
*Plaintiff,*

v.

**ALARIC FOX,** Chief of Police, Enfield Police Department, in his individual and official capacities;

**WILLIE PEDEMONTI,** Detective Lieutenant, Enfield Police Department, in his individual and official capacities;

**STEVEN PRIOR,** Detective, Enfield Police Department, in his individual and official capacities;

*Defendants.*

**Case No.:** *Reilly v. Fox, et al.*, 3:26-cv-00623-KAD

**COMPLAINT AND JURY DEMAND**
(42 U.S.C. § 1983 — Civil Rights Violations)

---

## PRELIMINARY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the Uniform Criminal Extradition Act (UCEA). Plaintiff Christopher B. Reilly seeks redress for a catastrophic, systemic breakdown of constitutional boundaries engineered by the Defendants.

2. Rather than adhering to the explicit mandate of the Extradition Clause of the United States Constitution and statutory rendition frameworks, Defendants willfully substituted a constitutional process with a lawless, shortcut "BOLO-to-detainer" scheme. By manipulating law enforcement across state borders, interrogating Plaintiff outside their jurisdiction, and using unperfected, fabricated detainers to anchor Plaintiff in an asylum state's jail for sixteen months, Defendants caused a severe, irremediable deprivation of Plaintiff's liberty without due process of law.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3)-(4) (civil rights).

4. Venue is proper in the United States District Court for the District of Connecticut under 28 U.S.C. § 1391(b), as the Defendants reside within this district and a substantial part of the events, omissions, and unconstitutional policy decisions giving rise to these claims occurred in Enfield, Connecticut.

## PARTIES

5. **Plaintiff Christopher B. Reilly** is a citizen of the United States and was, at all times relevant to this Complaint, subject to unlawful cross-border custody, confinement, and deprivation of rights orchestrated by Defendants.
6. **Defendant Alaric Fox** was, at all times relevant, the Chief of Police for the Enfield Police Department. He is sued in his individual capacity for his personal involvement, training failures, and official authorization of the extra-legal rendition practices challenged herein, and in his official capacity as a policy-maker.
7. **Defendant Detective Lieutenant Willie Pedemonti** was, at all times relevant, a supervisor and detective within the Enfield Police Department. He is sued in his individual capacity for his direct personal participation in the extra-jurisdictional interrogation and unlawful containment scheme, and in his official capacity.
8. **Defendant Detective Steven Prior** was, at all times relevant, a detective within the Enfield Police Department. He is sued in his individual capacity for his direct personal participation in the extra-jurisdictional interrogation and unlawful containment scheme, and in his official capacity.
9. At all times relevant, all Defendants acted under color of state law in their capacities as law enforcement officers of the Town of Enfield, Connecticut.

## STATEMENT OF FACTS

10. On the night of June 18, 2025, an incident occurred involving discharges at an empty InnoVest Financial Services building in Enfield, Connecticut. An eyewitness alleged that a suspect pointed a firearm before fleeing the scene in a 2007 maroon Lincoln Town Car.
11. Enfield Police Department personnel issued a regional "Be On The Lookout" (BOLO) alert detailing the vehicle description and license plate number.
12. Approximately 30 minutes later, based strictly on the Enfield BOLO, local authorities in Agawam, Massachusetts, intercepted and detained Plaintiff.
13. Shortly after Plaintiff was taken into custody in Massachusetts, Defendants Detective Lieutenant Willie Pedemonti and Detective Steven Prior traveled across state lines to the Agawam Police Department.
14. Defendants Pedemonti and Prior proceeded to interrogate Plaintiff outside their lawful territorial jurisdiction. During this interrogation, Plaintiff provided an open, honest account of the evening's events.
15. Armed with this information, Defendants Pedemonti, Prior, and Chief Alaric Fox chose to abandon the mandatory legal frameworks governing interstate rendition.
16. Instead of submitting a formal, verified demand for extradition through the Governors of Connecticut and Massachusetts as required by the U.S. Constitution and the UCEA, Defendants initiated an illicit, cross-border holding arrangement.
17. In direct consultation with asylum state authorities, Defendants caused auxiliary, possessory charges to be levied against Plaintiff in Massachusetts to justify his immediate confinement, under the explicit, unconstitutional promise that Connecticut would "come get him" whenever Massachusetts was "done with him."
18. Simultaneously, Defendants lodged a detainer and an unperfected, structurally flawed warrant with the Massachusetts detention facility.
19. This detainer acted as a perpetual anchor, keeping Plaintiff in a state of indefinite "pretrial containment" in the asylum state for sixteen months.
20. Defendants knew, or should have known, that leaving unperfected warrants in the National Crime Information Center (NCIC) database without actively seeking extradition created a perpetual state of fugitivity, stripping Plaintiff of his ability to face his accusers, secure bail, or invoke his speedy trial protections.
21. As a direct result of Defendants' extra-legal shortcuts, Plaintiff spent a year confined in the Hampden County facility, followed by subsequent detention in the Berkshire County Jail in Pittsfield, enduring severe psychological anxiety, reputational damage, and absolute loss of bodily liberty.

## LEGAL ALLEGATIONS & CONTROLLING PRECEDENT

22. The Eleventh Circuit in *Harden v. Pataki*, 320 F.3d 1289 (11th Cir. 2003), joining five sister circuits, established that "a violation of state extradition law can serve as a basis of a 42 U.S.S.C. § 1983 action, where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States."
23. The Second Circuit establishes that the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).
24. Defendants Pedemonti and Prior were directly, personally involved by traveling into the asylum state, conducting an extra-jurisdictional interrogation, and setting up the unlawful detainer holding pattern.
25. Defendant Chief Fox was personally involved by supervising, authorizing, and maintaining the stale NCIC entries and unperfected warrants, willfully refusing to send transport personnel to perfect extradition, thereby balkanizing justice to the Plaintiff's extreme detriment.

---

# CAUSES OF ACTION

## COUNT I: DEPRAVATION OF DUE PROCESS AND SEIZURE OUTSIDE EXTRADITION FRAMEWORK

*(42 U.S.C. § 1983 — Fourth and Fourteenth Amendments)*
*(Against All Defendants)*
26. Plaintiff realleges paragraphs 1 through 25.
27. Defendants' bypass of constitutional and statutory extradition procedures constitutes a "pretend" adherence to law that completely lacks the structural safeguards of the U.S. Constitution and the UCEA.
28. By anchoring Plaintiff in an out-of-state facility using an unperfected detainer system, Defendants directly caused a sixteen-month deprivation of Plaintiff's liberty without due process, constituting an unreasonable, continuous seizure.

## COUNT II: VIOLATION OF RIGHT TO A SPEEDY TRIAL / PERPETUAL FUGITIVITY

*(42 U.S.C. § 1983 — Sixth and Fourteenth Amendments)*
*(Against All Defendants)*
29. Plaintiff realleges paragraphs 1 through 28.
30. Defendants' purposeful delay and absolute refusal to perfect their demand for extradition subjected Plaintiff to a toxic, theater-like shortcut system.
31. Under the balancing test of *Barker v. Wingo*, 407 U.S. 514 (1972), Defendants' sixteen-month delay, lack of justification, and willful neglect of NCIC data management directly prejudiced the Plaintiff, causing extraordinary anxiety and a complete subversion of his speedy trial rights.

## COUNT III: FAILURE TO TRAIN AND SUPERVISE / UNCONSTITUTIONAL CUSTOM

*(42 U.S.C. § 1983 — Municipal/Supervisory Liability)*
*(Against Defendant Chief Alaric Fox)*
32. Plaintiff realleges paragraphs 1 through 31.
33. Defendant Chief Alaric Fox maintained a custom, policy, or pervasive practice within the Enfield Police Department of utilizing informal detainer holds and cross-border accommodations to avoid the financial and administrative burdens of formal gubernatorial extradition.
34. Defendant Fox failed to train and supervise detectives Pedemonti and Prior adequately regarding the hard jurisdictional limits of their authority and the constitutional necessity of perfecting extradition warrants, directly resulting in the civil rights violations suffered by Plaintiff.

---

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher B. Reilly respectfully requests that this Court enter judgment against the Defendants, granting the following relief:

- **A. Compensatory damages** against all Defendants, jointly and severally, in the amount of $25 million, for the loss of liberty, psychological trauma, and constitutional injuries sustained during more than sixteen months of unlawful detention;
- **B. Punitive damages** against the Defendants in their individual capacities for their malicious, reckless, and callous indifference to Plaintiff's clearly established constitutional rights;
- **C. Any such other and further relief** as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues and claims so triable.

Dated: October 29, 2026
Respectfully submitted,

---

**Christopher B. Reilly,**

**Plaintiff Pro Se**

---